DAVID ISRAEL ET AL. *v.* STATE FARM MUTUAL
AUTOMOBILE INSURANCE COMPANY ET AL.
(SC 16474)

Sullivan, C. J., and Norcott, Palmer, Vertefeuille and Zarella, Js.

Argued November 1, 2001—officially released February 19, 2002

*David M. Cohen*, with whom was *Daniel M. Young*, for the appellants (plaintiffs).

*John W. Lemega*, with whom, on the brief, were *Daniel P. Scapellati* and *Steven H. Broer*, for the appellees (defendants).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this case, which comes to us upon acceptance of two certified questions from the United States Court of Appeals for the Second Circuit,[1] is whether certain language in an umbrella insurance policy issued by the defendants is ambiguous, with the result that the policy must be construed so as to provide the plaintiffs with coverage. We answer the first certified question in the affirmative.[2]

---

[1] General Statutes § 51-199b, the Uniform Certification of Questions of Law Act, provides in relevant part: "(d) The Supreme Court may answer a question of law certified to it by a court of the United States . . . if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state. . . ."

[2] The Second Circuit Court of Appeals asked this court to answer the following two questions: (1) "Where an umbrella insurance policy providing uninsured motorist coverage states that (1) coverage will not apply if underlying insurance is not maintained; (2) coverage may not be provided if the insured fails to maintain underlying coverage; and (3) if underlying coverage is not maintained, the insured will be responsible for the underlying limit amount of any loss, is the policy ambiguous as to whether it completely denies uninsured motorist coverage to an insured who fails to maintain underlying insurance or whether in that event it only requires the insured to bear responsibility for the loss up to the underlying limit amount, and should the policy therefore be interpreted to provide umbrella uninsured motorist coverage in whole or in part to an insured who has failed to maintain underlying coverage?" (2) "Where the declarations page of an insurance policy states, 'If this policy is terminated we will give you and the Mortgagee/ Lienholder written notice in compliance with the policy or as required by law' and the definitions section of the policy defines 'you' as any insured, is the policy ambiguous as to whether 'you' refers to the named insured only or to all insureds and should the policy therefore be interpreted to require only the named insured to maintain underlying insurance?" *Israel*

The named plaintiff, David Israel (plaintiff),[3] brought this breach of contract action individually and as personal representative of the estate of his wife, Susan Israel, in the Superior Court after the defendants, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company, denied the plaintiff's claim for underinsured motorist benefits. The defendants removed the case to the United States District Court for the District of Connecticut. The District Court rendered summary judgment in favor of the defendants, from which the plaintiff appealed to the United States Court of Appeals for the Second Circuit. The Court of Appeals then certified two questions of law to this court, which we accepted. See footnote 2 of this opinion. We conclude that the insurance policy in question is ambiguous and, therefore, we construe the policy so as to afford the plaintiff underinsured motorist coverage.

The following stipulated facts are relevant to our resolution of the certified questions. The plaintiff was injured, and his wife was killed, when their automobile, which he was driving and in which his wife was a passenger, collided with a vehicle driven by an underinsured motorist. The underinsured motorist had automobile liability insurance, but his coverage fell short of fully compensating the plaintiff and the estate of his wife. Following exhaustion of the underinsured motorist's coverage, the plaintiff filed a claim for underinsured motorist benefits under a personal liability umbrella insurance policy issued by the defendants to the plaintiff's mother, with whom he lived on a part-time basis.[4] The defendants denied the claim because,

---

v. *State Farm Mutual Automobile Ins. Co.*, 239 F.3d 127, 129 (2d Cir. 2000). Because we answer the first certified question in the affirmative, we need not reach the second certified question.

[3] References herein to the plaintiff are to David Israel in his personal and representative capacities.

[4] The Second Circuit Court of Appeals affirmed the District Court's conclusion, contrary to the defendants' assertion, that the plaintiff was an "insured" under his mother's umbrella policy by virtue of his being a part-time resident

inter alia, the plaintiff had failed to maintain underlying uninsured motorist coverage on his automobile, as allegedly required by his mother's insurance policy. The plaintiff thereafter initiated the underlying litigation and appeal.

We begin by setting forth the standard of review that governs our resolution of the certified question. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Hansen* v. *Ohio Casualty Ins. Co.*, 239 Conn. 537, 543, 687 A.2d 1262 (1996).

The issue that we must resolve is whether the umbrella policy issued by the defendants is ambiguous because it is inconsistent regarding the consequences of the plaintiff's failure to maintain the underlying coverage required by the policy. Specifically, we must decide if the policy is ambiguous as to whether such failure vitiates the umbrella coverage, or merely results in the insured being personally responsible for the amount of the required underlying coverage before the umbrella coverage takes effect. We conclude that the policy is ambiguous.

The policy at issue in the present case consists of four parts: a nine page booklet entitled "Personal Liability Umbrella Policy" (umbrella booklet), an addendum to that booklet entitled "Uninsured Motor Vehicle Coverage" (uninsured addendum), a declarations page, and four pages of endorsements. The umbrella booklet provides in relevant part: "YOUR DUTIES TO US. These are things you must do for us. We may not provide coverage if you refuse to . . . . 4. maintain your under-

of his mother's household. *Israel* v. *State Farm Mutual Automobile Ins. Co.*, 239 F.3d 127, 132 (2d Cir. 2000). That determination is not challenged by the defendants and was not included in the questions of law certified to this court.

lying insurance. All insurance listed in the Declarations must be maintained at all times. The limits listed in the Declarations are the minimum you must maintain. *If the required underlying limits are not maintained, you will be responsible for the underlying limit amount of any loss. . . .*" (Emphasis added.)

The uninsured addendum provides in relevant part as follows: "Coverage U—Uninsured Motor Vehicle . . . These conditions apply: 1. You must maintain underlying limits for uninsured motorist motor vehicle coverage equal to the limits listed in the Declarations. *If these underlying limits are not maintained, this coverage will not apply. . . .* All other provisions of this policy apply." (Emphasis added.)

The plaintiff claims that these provisions conflict, creating an uncertainty as to the status of the umbrella coverage when the underlying coverage is not maintained and rendering the policy ambiguous. The plaintiff therefore claims that the policy must be construed so as to provide him with coverage. We agree with the plaintiff.

Our analysis of the language of the insurance contract is governed by the well established principle of insurance law that "policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters, and that ambiguities in contract documents are resolved against the party responsible for its drafting; the policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view. . . . The premise behind the rule is simple. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests. . . . A further, related

rationale for the rule is that [s]ince one who speaks or writes, can by exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter." (Internal quotation marks omitted.) *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 544. This canon, commonly styled contra proferentem, is more rigorously applied in the context of insurance contracts than in other contracts. Id., 545.

The doctrine of contra proferentem applies, however, only if we conclude that the language of the insurance policy is ambiguous. Thus, we must decide whether, reading the policy "from the perspective of a reasonable layperson in the position of the purchaser of the policy," the policy is ambiguous. *Ceci* v. *National Indemnity Co.*, 225 Conn. 165, 168, 622 A.2d 545 (1993). In construing the document, we "look at the [policy] as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 545–46. Utilizing this approach, we conclude that the policy language is ambiguous.

The "Your Duties to Us" provision of the umbrella booklet and the "Coverage U" section of the uninsured addendum provide the defendants with inconsistent remedies for the plaintiff's failure to maintain the requisite underlying insurance on his automobile. The first provision indicates that in the event of an insured's failure to maintain underlying coverage, the insured will be responsible for any loss up to the amount of the required underlying coverage before the umbrella coverage takes effect. The latter provision provides that the insured forfeits umbrella coverage completely if he or she does not maintain the requisite underlying coverage.

The language of the policy does not resolve this conflict in any manner that is comprehensible to a lay insured. It simply is unclear from the language of the policy whether the provision of the umbrella booklet or the section of the uninsured addendum is controlling in the event of an insured's failure to maintain the necessary underlying coverage. Thus, it is not possible to give effect to both of these provisions in a manner that resolves the ambiguity created by the policy language. "[L]eaving a layperson to sort out the ambiguities and misleading inconsistencies in the present policy is precisely the problem that the rules of insurance policy construction were designed to avoid." (Internal quotation marks omitted.) Id., 546–47. We therefore conclude that the conflict between the language in the "Your Duties to Us" provision of the umbrella booklet and the language in the "Coverage U" section of the uninsured addendum renders the policy ambiguous.

The defendants concede that the umbrella booklet provision applies generally to the entire policy, including the uninsured addendum. They claim, however, that because the "Coverage U" section of the uninsured addendum is an endorsement, it controls other, more general policy provisions. We reject the defendants' argument because we disagree with their assertion that the "Coverage U" section is an endorsement. It is clear from the text of the policy that when the defendants issued a policy endorsement, they explicitly labeled the endorsement as such. There are two endorsements in the policy at issue in the present case, and they are entitled, respectively, "Policy Endorsement" and "Amendatory Endorsement." In accordance with their status as policy endorsements, these sections clearly and unambiguously indicate to the reader that their terms supersede other terms in the policy.[5] In contrast,

---

[5] For example, the "Amendatory Endorsement" section begins by providing: "Under 'EXCLUSIONS,' item 10. is deleted and will not apply to this policy.

the word endorsement does not appear in the uninsured addendum, and the "Coverage U" section of that addendum in no way suggests that its terms control over other policy terms.

The defendants further argue that, even if the "Coverage U" section of the uninsured addendum is not an endorsement, the language of that section clearly indicates to the reader that the condition contained therein is specific to that section and thus controls over the more general "Your Duties to Us" provision in the umbrella booklet. Specifically, the defendants claim that the following language unambiguously indicates that the conditions contained in the "Coverage U" section control over more general policy provisions: *"These conditions apply*: 1. You must maintain underlying limits for uninsured [motorist] motor vehicle coverage equal to the limits listed in the Declarations. If these underlying limits are not maintained, this coverage will not apply. . . . *All other provisions of this policy apply.*" (Emphasis added.)

In advancing this argument, the defendants rely upon the well established principle of contractual interpretation that "the particular language of a contract must prevail over the general." *Miller Bros. Construction Co.* v. *Maryland Casualty Co.*, 113 Conn. 504, 514, 155 A. 709 (1931). This canon is of no help to the defendants in the present case, however, because the language upon which the defendants rely does not support the claim that the "Coverage U" section of the uninsured addendum is "specific." Indeed, the use of the phrase "[a]ll other provisions of this policy apply," without accompanying language indicating that the provisions of the "Coverage U" section control over other generally applicable policy provisions, exacerbates the ambiguity

"Under 'Other Conditions,' item 11. Cancellation and item 12. Non-Renewal are replaced by the following . . . ."

by seemingly giving effect to the conflicting language in the umbrella booklet, leaving no basis for the plaintiff to determine which provision is applicable.

Because we conclude that the policy language is ambiguous, the doctrine of contra proferentem properly is applicable. Thus, we must construe the policy in a manner that affords coverage to the insured. See *Hansen* v. *Ohio Casualty Ins. Co.*, supra, 239 Conn. 548.

The first certified question that we were asked to answer is: "Where an umbrella insurance policy providing uninsured motorist coverage states that (1) coverage will not apply if underlying insurance is not maintained; (2) coverage may not be provided if the insured fails to maintain underlying coverage; and (3) if underlying coverage is not maintained, the insured will be responsible for the underlying limit amount of any loss, is the policy ambiguous as to whether it completely denies uninsured motorist coverage to an insured who fails to maintain underlying insurance or whether in that event it only requires the insured to bear responsibility for the loss up to the underlying limit amount, and should the policy therefore be interpreted to provide umbrella uninsured motorist coverage in whole or in part to an insured who has failed to maintain underlying coverage?" Our answer is: Yes.

No costs shall be taxed in this court to either party.

In this opinion the other justices concurred.