David ISRAEL, individually and as personal representative of the estate of Susan Israel, Plaintiff–Appellant,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and State Farm Fire and Casualty Company, Defendants–Appellees.

Docket Nos. 99–7810(L), 00–7188(CON).

United States Court of Appeals, Second Circuit.

Argued Sept. 12, 2000.

Decided May 21, 2002.

David M. Cohen, Stamford, CT (Wofsey Rosen Kweskin & Kuriansky, LLP), for Plaintiff–Appellant David Israel, individually and as personal representative of the estate of Susan Israel.

Daniel P. Scapellati, Hartford, CT (Halloran & Sage, LLP), for Defendants–Appellees, State Farm Mutual Automobile Insurance Company and State Farm Fire and Casualty Company.

Before: FEINBERG, CABRANES and F.I. PARKER, Circuit Judges.

FEINBERG, Circuit Judge.

This is an appeal by plaintiff David Israel, individually and as personal representative of the estate of Susan Israel, from a judgment of the United States District Court for the District of Connecticut (Arterton, J.) granting the motion of defendant State Farm Fire and Casualty Company (State Farm) for summary judgment.[1] The basis of the judgment was that the umbrella insurance policy sued upon did not provide uninsured motorist coverage for plaintiff Israel's losses because he had not maintained underlying uninsured motorist coverage. Because we believed that the appropriate interpretation of crucial policy language was not clear under Connecticut law, in December 2000 we certified two controlling questions of law to the Connecticut Supreme Court. *Israel v. State Farm Mut. Auto. Ins. Co.,* 239 F.3d 127, 129 (2d Cir.2000) (hereafter *Israel I*). Our first question was whether certain language in the umbrella insurance policy dealing with the extent of coverage for insureds who fail to maintain underlying coverage is ambiguous and should be construed against the insurer. Our second question asked whether the policy's use of the word "you" in apparent reference in one place to "the named insured" and in another place to "any insured" also makes the policy ambiguous.

In an opinion issued in February 2002, the Connecticut Supreme Court answered our first question in the affirmative, *Israel v. State Farm Mut. Auto. Ins. Co.,* 259 Conn. 503, 789 A.2d 974, 975 (2002) (hereafter *Israel II*). The court held that (1) defendant's umbrella policy language is ambiguous because it states two apparently conflicting consequences for insureds who fail to maintain the underlying coverage required by the policy, and (2) the policy must therefore be construed against the insurer so as to provide plaintiff with coverage. *Id.* at 976–78.[2]

---

1. Plaintiff does not appeal the district court's entry of summary judgment in favor of State Farm Mutual Automobile Insurance Company, the other named defendant in this case.

2. The Connecticut Supreme Court also stated that because it answered the first certified question in the affirmative, it "need not reach the second certified question." *Israel II,* 789 A.2d at 975 n. 2.

Thereafter, we gave the parties an opportunity to comment on the Connecticut Supreme Court's opinion, which they did by supplemental briefs in letter form.

I.

A.  Background

The following statement of relevant facts and description of the legal proceedings leading to our December 2000 certification is taken almost verbatim from our prior opinion.  The facts in this case are undisputed.  From November 1994 until October 1996, David Israel worked as a commercial pilot, flying out of Bridgeport, Connecticut.  Israel stayed in Stamford, Connecticut, at the home of his mother and his stepfather (Lenore and William Gunther) when he was working, and stayed in Florida with his wife (Susan Israel) when he was not.  As a result, Israel spent over two-thirds of his nights in the Gunthers' Stamford residence during this time period.

In May 1996, the car in which David and Susan Israel were traveling in Florida was struck head-on by a car driven by Melvin Root. Because of the severity of the damage to their car, David and Susan Israel were trapped in the automobile for some time, and during that period, David Israel watched his wife die as a result of injuries she sustained in the accident.  David Israel survived, but was seriously injured. Root, who was also killed in the accident, was found to have alcohol and marijuana in his bloodstream.  The police investigation that followed found that Root caused the accident, and for the purposes of this lawsuit, it is agreed that David and Susan Israel were in no way responsible for the collision.

During the relevant time period, Lenore and William Gunther were the named insureds in an umbrella policy[3] issued by State Farm that provided up to $1 million in personal liability and uninsured motorist coverage.  According to the definitions section of the policy, those insured under it include those **"named insured's relatives"** who are "residents of the **named insured's** household" (emphasis in original).  A numbered, nine-page booklet titled "Your State Farm Personal Liability Umbrella Policy" (sometimes hereafter referred to as "the nine-page booklet") sets out the definitions of terms used in the policy, the personal liability coverage provided by the policy, exclusions from the policy, the insured's duties to State Farm, and other conditions of the policy.  An unnumbered addendum that follows these nine pages titled "Uninsured Motor Vehicle Coverage" (uninsured motorist addendum) describes the uninsured motor vehicle coverage provided by the umbrella policy.

The portion of the umbrella policy entitled "Your Duties to Us" that is found in the nine-page booklet includes the following language:

We [State Farm] may not provide coverage if you refuse to ... maintain your underlying insurance.  All insurance listed in the **Declarations** must be maintained at all times.  The limits listed in the **Declarations** are the minimum you must maintain.  If the required underlying limits are not maintained, you will be responsible for the underlying limit amount of any loss.  If any of your underlying coverage limits are used up, reduced or canceled:

a.  you must try to replace the coverage; and

b.  you must notify us immediately.

**3.**  In this opinion, we use the term "umbrella policy" to refer to the policy as a whole, including the nine-page booklet titled "Personal Liability Umbrella Policy," the uninsured motorist addendum entitled "Uninsured Motor Vehicle Coverage," the declarations page, and four pages of endorsements.

You must maintain your underlying coverage if you travel outside the United States or Canada. If the minimum underlying limits we require are not available, you must obtain the highest legally available limit.

(Emphasis in original.) The uninsured motorist addendum provides, "You must maintain underlying limits for **uninsured motor vehicle** coverage equal to the limits listed in the **Declarations**. If these underlying limits are not maintained, this coverage will not apply" (emphasis in original). At the time of the accident, while Lenore and William Gunther maintained this underlying uninsured motorist insurance for their vehicle, David Israel did not for his.

Melvin Root was insured, but his insurance did not fully compensate David Israel and the estate of Susan Israel for their injuries. After exhausting this coverage, David Israel, on behalf of himself and the estate of Susan Israel, made a claim for uninsured motorist coverage under his mother's umbrella policy.[4] State Farm denied the claim. David Israel then brought the present action in Connecticut Superior Court, and State Farm removed the case to federal district court on the basis of diversity jurisdiction.

Following discovery, State Farm moved for summary judgment, asserting that (1) David Israel was not a resident of his mother's household and so was not cov-ered by the umbrella policy; and (2) even if David Israel was a resident of his mother's household, his failure to maintain underlying uninsured motorist coverage precluded his claims under the policy.[5] In an opinion issued in February 2000, Judge Arterton granted State Farm's summary judgment motion, holding that although Israel was a resident of his mother's household under Connecticut law and thus an "insured" under the policy, his failure to maintain underlying uninsured motorist coverage precluded any claim under the uninsured motorist coverage of the umbrella policy. This appeal followed.

B. The certification opinion of this court

On appeal, David Israel argued to us that the umbrella policy, properly interpreted, does not completely deny coverage to an insured who fails to maintain the required underlying insurance, but only requires the insured to bear responsibility for any loss up to the underlying limits before gaining access to the umbrella coverage. Israel also argued in the alternative that even if maintenance of underlying insurance was required, his mother's maintenance of such coverage on her own car satisfied the requirement. State Farm disputed both arguments.[6]

In *Israel I*, after concluding that Israel was covered under his mother's policy because he was a resident of his mother's household, we noted that the remaining issue in the case involved the appropriate

---

4. Root was not technically an uninsured driver; rather he was underinsured for the losses sustained by David and Susan Israel. State Farm has not argued that the umbrella policy's uninsured motorist coverage would not cover the losses occasioned by such an underinsured driver if all other conditions and requirements of the policy were met. We therefore assume that Root's status as an underinsured rather than an uninsured driver is not relevant to the question of State Farm's liability.

5. Israel did not formally file a cross-motion for summary judgment. However, during a pretrial telephonic conference with Judge Arterton, State Farm stipulated that if it did not prevail in its motion for summary judgment, Israel would be entitled to judgment as to State Farm's liability and the parties would proceed to the issue of damages.

6. State Farm also argued to us that Israel was not a resident of his mother's household and therefore was not "insured" under his mother's umbrella policy.

interpretation of the policy's provisions in connection with the failure to maintain underlying uninsured motorist coverage. 239 F.3d at 132. We stated that

> interpreting the provisions of the policy addressing underlying coverage thus requires a determination of whether the "Your Duties to Us" section applies to the uninsured motorist coverage and, if so, a further determination of whether the "Your Duties to Us" language, in combination with the language in the uninsured motorist addendum, creates an ambiguity.

*Id.* at 133. We stated our view that the appropriate interpretation of crucial policy language of the umbrella policy was not clear under Connecticut law, *id.* at 133–34, and we certified the following two questions to the Connecticut Supreme Court:

> 1. Where an umbrella insurance policy providing uninsured motorist coverage states that (1) coverage will not apply if underlying insurance is not maintained; (2) coverage may not be provided if the insured fails to maintain underlying coverage; and (3) if underlying coverage is not maintained, the insured will be responsible for the underlying limit amount of any loss, is the policy ambiguous as to whether it completely denies uninsured motorist coverage to an insured who fails to maintain underlying insurance or whether in that event it only requires the insured to bear responsibility for the loss up to the underlying limit amount, and should the policy therefore be interpreted to provide umbrella uninsured motorist coverage in whole or in part to an insured who has failed to maintain underlying coverage?
> 2. Where the declarations page of an insurance policy states, "If this policy is terminated we will give you and the Mortgagee/Lienholder written notice in compliance with the policy or as required by law" and the definitions section of the policy defines "you" as any

insured, is the policy ambiguous as to whether "you" refers to the named insured only or to all insureds and should the policy therefore be interpreted to require only the named insured to maintain underlying insurance?

*Id.* at 129.

## C. The Connecticut Supreme Court decision in response to our certification

In *Israel II,* a unanimous opinion issued in February 2002, the Connecticut Supreme Court analyzed the language of the umbrella policy regarding the extent to which an underinsured is covered, and held that in that respect the insurance policy is ambiguous. 789 A.2d at 976–78. The court therefore concluded that under Connecticut law the policy must be construed against the drafter insurance company so as to afford the plaintiff underinsured motorist coverage. *Id.* at 978–79. The court isolated the dispositive issue as follows:

> Specifically, we must decide if the policy is ambiguous as to whether such failure [to maintain the underlying coverage required by the policy] vitiates the umbrella coverage, or merely results in the insured being personally responsible for the amount of the required underlying coverage before the umbrella coverage takes effect.

*Id.* at 976. The court found conflict between two provisions, one in the "Your Duties to Us" section of the nine-page booklet and the other in the uninsured motorist addendum. *Id.* at 976–77. The court held that this created uncertainty as to the status of the umbrella coverage when the underlying coverage is not maintained, thus rendering the policy ambiguous. *Id.* at 976–78. Specifically, the court found that the "Your Duties to Us" provision indicates that in the event of an insured's failure to maintain underlying coverage, the insured will be responsible for any loss up the amount of the required

underlying coverage before the umbrella coverage takes effect, while the uninsured motorist addendum provision indicates that the insured forfeits umbrella coverage completely if he or she does not maintain the requisite underlying coverage. *Id.* at 977. The court concluded that this direct conflict between the two provisions is not resolved "in any manner that is comprehensible to a lay insured." *Id.* at 977.[7]

The Connecticut Supreme Court then stated that under Connecticut insurance law, ambiguities in a contract are resolved against the party responsible for its drafting, and that this canon is more rigorously applied in the context of insurance contracts than in other contracts. *Israel II*, 789 A.2d at 977 (citing *Hansen v. Ohio Cas. Ins. Co.*, 239 Conn. 537, 687 A.2d 1262, at 1265 (1996)). Therefore, the court concluded that because the policy language is ambiguous, the policy must be construed in a manner that affords coverage to the insured.[8] *Id.* at 978. Thus, plaintiff David Israel's claims are covered by his mother's State Farm umbrella insurance policy.

## II. Analysis

■ We review de novo the district court's grant of summary judgment to defendants. *Lane Capital Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 343 (2d Cir.1999).

■ It is stipulated that there are no genuine disputes concerning any material facts. The governing law on the controlling issue in this diversity case is the law of Connecticut. See, e.g., *Belmac Hygiene, Inc., v. Belmac Corp.*, 121 F.3d 835, 840 (2d Cir.1997). We apply that law as stated by the Connecticut Supreme Court. Therefore, we hold that defendant's umbrella policy is ambiguous and must be construed against defendant so as to afford plaintiff Israel uninsured motorist coverage. We hold that plaintiff Israel's failure to maintain underlying insurance thus did not preclude his umbrella policy claim. We reverse the district court's grant of summary judgment to defendant, and remand for further proceedings consistent with this opinion.[9]

In defendant's letter brief to us, it argues that the Connecticut Supreme Court's opinion, while stating that plaintiff is covered by the umbrella policy, leaves open the question of whether Israel is covered by the policy in full, or only for the amount exceeding the required uninsured motorist coverage. We leave it to the district court to address this issue in the first instance when it considers the question of damages.

Reversed and remanded.[10]

7. The Connecticut court also rejected defendant's argument that the uninsured motorist addendum is an endorsement that controls other more general policy provisions. The court found that the addendum was not an endorsement since it was not labeled as such, while two actual endorsements in the policy were so labeled. *Id.* at 978. The court also rejected defendant's argument that the language in the uninsured motorist addendum is specific to that section and controls over the more general "Your Duties to Us" provision, finding that the uninsured motorist addendum is not "specific" and actually exacerbates the ambiguity. *Id.*

8. As indicated in n. 2 supra, the court did not find it necessary to answer our second certified question.

9. Because the material facts were not in dispute, the parties agreed that plaintiff would be entitled to summary judgment as to liability if the district court denied defendants' summary judgment motion, and that the parties would then proceed to the issue of damages. See n. 5 supra.

10. Our prior opinion left open the question of costs on the appeal in this court. In connection with the certification, we ordered the

APPENDIX A

YOUR
STATE FARM
PERSONAL LIABILITY UMBRELLA
POLICY

FP 7960 1

parties to bear equally the costs and fees, as may be required by the Connecticut Supreme Court. That court, in its February 2002 opinion, made no allocation of costs. In plaintiff's supplemental brief, he requested an order that costs on appeal be taxed in his favor, pursuant to 28 U.S.C. § 1920. The request is granted.

602

■■■■■■■■■■■■■■■■

## TABLE OF CON NTS

### DECLARATIONS

Your Name
Your Mailing Address
Policy Period
Policy Limits
Self Insured Retention
Required Underlying Coverages

| | Beginning on Page |
|---|---|
| AGREEMENT | 1 |
| DEFINITIONS | 1 |
| COVERAGE L - PERSONAL LIABILITY | 3 |
| DEFENSE AND SETTLEMENT COVERAGE | 3 |
| EXCLUSIONS | 4 |
| YOUR DUTIES TO US | 6 |
| OTHER CONDITIONS | 6 |

FP-7950 1
(1/87)

Printed in U.S.A.

b     the amount shown on the Declarations as the "Self-Insured Retention" This amount applies only if this policy applies but your required underlying insurance policy does not-include coverage for the loss.

## COVERAGES

1     **Coverage L - Personal Liability.** If you are legally obligated to pay damages for a loss. we will pay your net loss minus the retained limit. Our payment will not exceed the amount shown on the **Declarations** as Policy Limits · Coverage L · Personal Liability.

2.     **Defense and Settlement.**

a     We may investigate. negotiate and settle a claim or suit covered by this policy.

b     When the claim or suit is covered by this policy, but not covered by any other policy available to you:

(1)     we will defend the suit against you:

(2)     we will pay the premiums on bonds required in suits we defend. but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond:

(3)     we will pay the expenses we incur and costs taxed against you in suits we defend:

(4)     we will pay the reasonable expenses you incur at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

(5)     we will pay prejudgment interest awarded against you on that part of the judgment we pay under Coverage L: and

(6)     we will pay the interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court. that part of the judgment which does not exceed the limit of liability that applies.

c.     Payments under Defense and Settlement Coverage, except a settlement payment, are in addition to the Coverage L amount.

d.     Our obligation to defend a claim or suit ends when the amount we pay for damages equals our limit of liability under Coverage L.

3

## EXCLUSIONS

We will not provide insurance:

1.  if you are liable under a workers' compensation, unemployment compensation, disability benefits law, or a similar law.

2.  for personal injury or property damage.

    a.  which is either expected or intended by you; or

    b.  to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

3.  for property damage to:

    a.  your own property;

    b   aircraft you rent, use, or hold for others: or

    c.  property rented, borrowed or held for which you promised to provide insurance

4   for any loss involving your maintenance, use, handling or ownership of any aircraft.

5.  for any loss caused by providing or failing to provide a professional service.

6.  for any loss caused by your business operations or arising out of business property:

    a.  unless;

        (1) the underlying insurance listed on the Declarations provides coverage for the loss; and

        (2) the loss does not involve an automobile, recreational motor vehicle, or watercraft.

    b.  however; this exclusion does not apply to a private automobile or watercraft when used for business if:

        (1) your underlying policy applies to the loss; and

        (2) the private automobile or watercraft is not for hire either for the use of others or for carrying the property of others.

7.  for your legal liability:

    a.  to any person who is in your care because of child care services provided by or at the direction of:

        (1) you;

4

your employee: or

(3) any other person actually or apparently acting on your behalf

b. to any person who makes a claim because of personal injury to any person who is in your care because of child care services provided by or at the direction of:

(1) you;

(2) your employee; or

(3) any other person actually or apparently acting on your behalf.

**Defense and Settlement** coverage does not apply to any person indicated in 7.a. or 7 b. above.

This exclusion does not apply to the occasional child care service provided by you, or the part-time child care services provided by any insured who is under 19 years of age.

for any loss caused by your act or omission as a member of a corporation's board of directors. This exclusion does not apply if the corporation:

a. was formed as a not-for-profit corporation; and

b. does not involve your business.

9. r a loss caused by pollution to land, water or air unless it is sudden and accidental.

10. for personal injury to the named insured, spouse, or anyone within the meaning of part a. or b. of the definition of insured.

11. for any loss caused by illegal discrimination.

12. for your share of a loss assessment charged against you as a member of an association of property owners.

13. for any loss that is insured by a nuclear energy policy even if the limits of that policy have been exhausted.

14. for any loss arising out of:

a. the entrustment by any insured to any person;

b. the negligent supervision by any insured of any person;

c. any liability statutorily imposed on any insured; or

d. any liability assumed through an unwritten or written agreement by any insured;

with regard to the ownership, maintenance or use of any aircraft, watercraft or motorized land conveyance unless underlying insurance described in the **Declarations** provides coverage for the loss.

15. for any loss arising out of your participation in, preparation or practice for any race, speed or demolition contest.

or similar competition involving a motorized land vehicle or motorized watercraft.

## YOUR DUTIES TO US

These are things you must do for us. We may not provide coverage if you refuse to:

1. notify us of an accident. If something happens that might involve this policy, you must let us know promptly. Send written notice to us or our agent. Include the names and addresses of the injured and witnesses. Also include the time, place and account of the accident.

2. notify us of a claim or suit. If a claim or suit is filed against you, notify your underlying insurer and us right away. You must send us every demand, notice, summons or other process you receive.

3. help and cooperate with us and your underlying insurer at all times regarding:

   a. settlement of claims;

   b. enforcement of your rights against others.

   c. attendance at hearings and trials;

   d. preservation of evidence; and

   e. location of witnesses.

4. maintain your underlying insurance. All insurance listed in the Declarations must be maintained at all times. The limits listed in the Declarations are the minimum you must maintain. If the required underlying limits are not maintained, you will be responsible for the underlying limit amount of any loss. If any of your underlying coverage limits are used up, reduced, or cancelled:

   a. you must try to replace the coverage; and

   b. you must notify us immediately.

You must maintain your underlying coverage if you travel outside the United States or Canada. If the minimum underlying limits we require are not available, you must obtain the highest legally available limit.

## OTHER CONDITIONS

These are the other conditions you should know:

1. **Reduced Underlying Coverage.** If your required underlying insurance

does not provide coverage for a loss because:

   a. it limits the amount it will pay in one year; or

6

b    it provides coverage for a loss only if reported while that policy is in effect or within a time period after that policy's termination;

you will be responsible for the underlying limit amount of any loss.

2    Appeals. If you or your underlying insurer choose not to appeal a judgment that we must help pay, we may choose to make the appeal. If we make the appeal, we will be responsible for:

a.    our limit of liability above the retained limit: and

b.    the additional costs and interest incurred during the appeal.

3    Payment of Loss. After your obligation has been set by final judgment or agreement with us:

a.    you may pay the Net Loss and submit proof to us. We will pay the amount above the retained limit up to the Coverage L limit; or

b.    we will pay the claimant directly, if you wish.

Our payment under any coverage provided by this policy will not exceed the limit of liability for that coverage listed in the Declarations for a loss.

4    Suit Against Us. No action shall be brought against us unless you have complied with policy provisions. No one has the right to join us in action against you. No action shall be brought against us until your obligation has been set by final judgment or agreement with us.

5.   Other Insurance. This policy is excess over all other valid and collectible insurance.

6.   Recovery. You must do all that you can to preserve your rights of recovery. These rights will belong to us up to the amount we pay for a loss.

7.   Changes. Waivers of our rights or changes to this policy must be issued by us in writing.

8.   Assignment. An assignment of this policy will be valid only after we give our written consent.

9.   Bankruptcy. If you become bankrupt or insolvent, we will still honor this policy.

10.  Death. If you die, this policy will cover another person while acting as the personal representative of your estate until the end of the policy period. This applies only with respect to the premises and property covered under this policy at the time of death.

11.  Policy Period. This policy applies only to loss which occurs during the period this policy is in effect.

12.  Cancellation. This policy can be cancelled by the named insured or us.

a. The named insured may cancel by giving written notice to us or our agent. The notice should include the date the policy should be cancelled. If the named insured cancels, the refund will be based on our rules for cancellation. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to the named insured in writing.

b If we choose to cancel the policy, we will send notice to the address shown in the **Declarations**. We will give at least 30 days notice of the date of our cancellation. If we cancel, the refund will be prorated. Proof of mailing shall be sufficient proof of notice.

3 **Non-Renewal.** We may elect not to renew this policy. We may do so by delivering or mailing written notice to the mailing address shown in the **Declarations**. The notice will be delivered or mailed at least 30 days before the expiration date of this policy. Proof of mailing shall be sufficient proof of notice.

14. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without additional premium within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

15. **Limit Per Loss.** This insurance applies separately to each insured, but our limit of liability per loss will be no greater than the individual coverage limit shown in the **Declarations**.

16. **Insolvency.** When coverage is not available from an underlying policy because the company is insolvent, this policy will not replace coverage of any state, provincial or association guarantee fund available for the loss.

17. **Mid-Term Changes.** When the named insured requests changes in this policy between anniversary dates, we reserve the right to adjust the premium in accordance with the change.

8

We have caused this policy to be executed and attested, but this policy shall not be valid unless countersigned by our duly authorized representative.

Secretary

President

The Board of Directors, in accordance with Article VI(c) of our Articles of Incorporation, may from time to time distribute equitably to the holders of the participating policies issued by us such sums out of our earnings that they judge are proper.

**610**

FE-7000.1
(3/88)

## UNINSURED OWNED VE  CLES

During the time that you cancel or suspend the underlying liability insurance covering vehicles insured by this policy, your duty to maintain underlying insurance is unchanged as explained in the policy section Your Duties to Us. You will be responsible for the amount of the required underlying insurance if a loss occurs.

All other provisions of this policy apply

FE 7000 1
9 86)

Printed in U.S.A

### NINSURED MOTOR VEHICLE ( VERAGE

This coverage applies to the operation of your automobile if the coverage is listed with a coverage amount in the Declarations. This coverage will also apply to the operation of your Recreational Motor Vehicles if the listing also states, "including Recreational Motor Vehicles."

**Definition**

"Uninsured Motor Vehicle" means:

1. a land motor vehicle, the ownership, maintenance or use of which is:

    a. not insured or bonded for bodily injury liability at the time of the accident; or

    b. insured or bonded for bodily injury liability at the time of the accident, but

        (1) the limits of liability are less than required by the financial responsibility act of the state where your automobile or recreational motor vehicle is mainly garaged;

        (2) the limits of liability:

            (a) are less than the limits you carry for uninsured motor vehicle coverage under this policy; or

            (b) have been reduced by payments to persons other than an insured to an amount less than the limits you carry for uninsured motor vehicle coverage under this policy; or

        (3) the insuring company denies coverage or is or becomes insolvent; or

2. a "hit-and-run" land motor vehicle whose owner or driver remains unknown and which strikes:

    a. you; or

    b. the vehicle you are occupying;

    and causes bodily injury to you.

An uninsured motor vehicle does not include a land motor vehicle:

1. insured under the liability coverage of this policy;

2. furnished for your regular use;

3. owned or operated by a self-insurer under any motor vehicle financial responsibility law, a motor carrier law or any similar law;

4. owned by any government or any of its political subdivisions or agencies;

5. designed for use mainly off public roads and not able to be licensed for public road use, unless the Coverage U listing in the Declarations states "including Recreational Motor Vehicles". This provision does not apply while the vehicle is on public roads; or

6. while located for use as premises.

**Coverage U - Uninsured Motor Vehicle**

We will pay, up to the Coverage U limit, the amount which you and your passengers are legally entitled to recover as bodily injury damages from the owner or driver of an uninsured motor vehicle.

These conditions apply:

1. You must maintain underlying limits for uninsured motor vehicle coverage equal to the limits listed in the Declarations. If these underlying limits are not maintained, this coverage will not apply.

2. The retained limit for Coverage U is the total amount received for the loss from or on behalf of the liable party plus the amount received from your underlying

(CONTINUED ON REVERSE SIDE)

FE 7655 1
9 86)

Printed in U.S.A

coverage, but     less than the amount of your required underlying limits.

3. We will pay only the amount in excess of the retained limit up to the Coverage U limit per loss.

4. This coverage will apply only when damages are paid by or on behalf of the liable party or there is payment by your underlying coverage.

5. This coverage will apply in accordance with the terms and conditions of your underlying Uninsured Motorist Coverage.

6. y payment made to a person under this coverage shall reduce any amount payable to that person under Coverage L - Personal Liability. This does not reduce the limit of liability required by law.

7. The limits of liability are not increased because:

    a. more than one vehicle is insured under this policy; or

    b. more than one person is insured at the time of the accident.

All other provisions of this policy apply.

FE-778
(3/85)

## POLICY ENDORSEMENT

### DEFINITIONS

The following are added:

16. When shown on the Declarations as "RE-QUIRED UNDERLYING INSURANCE POLICIES", these terms are defined as follows:

a. "AUTOMOBILE LIABILITY" means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of any land motor vehicle, trailer or semi-trailer designed for use mainly on public roads. The policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the Declarations. Automobile Liability Policy does not include a Recreational Motor Vehicle Liability Policy as defined below.

b. "RECREATIONAL MOTOR VEHICLE LIABILITY INCLUDING PASSENGER BODILY INJURY" means your policy which provides coverage for liability, including passenger bodily injury, caused by the ownership, operation, maintenance or use of a recreational land motor vehicle designed for use off public roads. This includes a motorized all terrain vehicle, amphibious vehicle, dune buggy, golfmobile, snowmobile, trailbike or minibike. The policy must include Uninsured and/or Underinsured Motor Vehicle Coverage if this coverage is shown on the Declarations.

c. "PERSONAL RESIDENTIAL LIABILITY" means your policy which provides coverage for liability caused by the ownership, maintenance or use of a premises as your residence.

d. "PERSONAL FARM LIABILITY" means your policy which provides coverage for liability caused by the ownership, maintenance or use of a premises as your residence and the ownership, operation, maintenance or use of your farm.

e. "WATERCRAFT LIABILITY" means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of a watercraft.

f. "RESIDENTIAL RENTAL LIABILITY" means your policy which provides coverage for liability caused by the ownership, maintenance or use of your residential rental property which is occupied by others.

g. "OFFICE PREMISES LIABILITY" means your policy which provides coverage for liability caused by the ownership, operation, maintenance or use of an office solely occupied by you.

h. "EMPLOYERS LIABILITY" means your policy which provides coverage for liability arising out of bodily injury sustained by your employees during the course of their employment by you.

i. "PROFESSIONAL LIABILITY" means your policy which provides coverage for liability caused by the rendering or failure to render professional services, negligent acts, errors or omissions in the practice of your profession listed on the Declarations.

17. "bodily injury" means physical injury, sickness, disease, emotional distress or mental injury to a person. This includes required care, loss of services and death resulting therefrom.

Bodily injury does not include:

a. any of the following which are communicable: disease, bacteria, parasite, virus, or other organism, any of which are transmitted by any insured to any other person; or

b. the exposure to any such disease, bacteria, parasite, virus, or other organism by any insured to any other person.

"loss", "net loss" and "personal injury" are replaced with the following:

6. "loss" means:

a. an accident, including injurious exposure to conditions, which results in bodily injury or property damage during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one loss; or

b. the commission of an offense, or series of similar or related offenses, which result in personal injury during the policy period.

FE-7786
(3/85)

(CONTINUED ON REVERSE SIDE)

Printed in U.S.A.

8. "net loss" means:

   a. the amount you are legally obligated to pay as damages for bodily injury, personal injury or property damage; and

   b. all reasonable expenses you incur in the investigation, settlement and defense of a claim or suit at our request. This does not include expenses covered by another policy, expenses we cover under the Defense and Settlement section of this policy, and salaries of your employees.

9. "personal injury" means injury caused by one or more of the following offenses:

   a. *false arrest, false imprisonment*, wrongful eviction, wrongful detention, malicious prosecution;

   b. libel, slander, defamation of character or invasion of rights of privacy.

## EXCLUSIONS

Exclusion 2. is replaced with the following:

2. for bodily injury or property damage:

   a. which is either expected or intended by you; or

   b. to any person or property which is the result of your willful and malicious act, no matter at whom the act was directed.

Exclusion 6. is replaced with the following:

6. for any loss caused by your business pursuits or arising out of business property:

   a. unless:

      (1) the underlying insurance listed on the Declarations provides coverage for the loss; and

      (2) the loss does not involve an automobile, recreational motor vehicle, or watercraft.

   b. however: this exclusion does not apply to a private automobile or watercraft when used for business if:

      (1) the underlying insurance listed on the Declarations applies to the loss; and

(2) the private automobile or watercraft is not for hire either for the use of others or for carrying the property of others.

Exclusion 7. is replaced with the following:

7. for any claim made or suit brought against you by:

   a. any person who is in your care because of child care services provided by or at the direction of:

      (1) you;

      (2) your employee; or

      (3) any other person actually or apparently acting on your behalf.

   b. any person who makes a claim because of bodily injury or personal injury to any person who is in your care because of child care services provided by or at the direction of:

      (1) you;

      (2) your employee; or

      (3) any other person actually or apparently acting on your behalf.

Defense and Settlement coverage does not apply to any person indicated in 7.a. or 7.b. above.

This exclusion does not apply to the occasional child care service provided by you; or the part-time child care services provided by any insured who is under 19 years of age.

Exclusion 10. is replaced with the following:

10. for bodily injury or personal injury to the named insured, spouse, or anyone within the meaning of part a. or b. of the definition of insured.

This exclusion also applies to any claim made or suit brought against you to share damages with or repay someone else who may be obligated to pay damages because of the bodily injury or personal injury.

The following is added:

16. for personal injury when you act with specific intent to cause harm or injury.

All other policy provisions apply.

PE-7007.1
(4/80)

## AMENDATORY ENDORSEMENT
### (Connecticut)

Under "EXCLUSIONS", item 10. is deleted and will not apply to this policy.

Under "Other Conditions", item 11. Cancellation and item 12. Non-Renewal are replaced by the following:

11. **Cancellation.**

   a. You may cancel this policy at any time by notifying us in writing of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

   b. We may cancel this policy only for the reasons stated in this condition. We will notify you in writing of the date cancellation takes effect. This cancellation notice may be delivered to you, or mailed to you at your mailing address shown in the Declarations. Proof of mailing shall be sufficient proof of notice:

   (1) When you have not paid the premium, we may cancel at any time by notifying you at least 10 days before the date cancellation takes effect. This condition applies whether the premium is payable to us or our agent or under any finance or credit plan.

   (2) When this policy has been in effect for less than 60 days and is not a renewal with us, we may cancel for any reason. We may cancel by notifying you at least 30 days before the date cancellation takes effect. The written notice will state our reasons for cancellation.

   (3) When this policy has been in effect for 60 days or more, or at any time if it is a renewal with us, we may cancel:

   (a) if there has been a material misrepresentation of fact which, if known to us, would have caused us not to issue this policy; or

   (b) if the risk has changed substantially since the policy was issued.

   We may cancel this policy by notifying you at least 30 days before the date cancellation takes effect.

   (4) When this policy is written for a period longer than one year, we may cancel for any reason at anniversary. We may cancel by notifying you at least 30 days before the date cancellation takes effect.

   c. When this policy is cancelled, the premium for the period from the date of cancellation to the expiration date will be refunded. When you request cancellation, the return premium will be based on our rules for such cancellation. The return premium may be less than a full pro rata refund. When we cancel, the return premium will be pro rata.

   d. The return premium may not be refunded with the notice of cancellation or when the policy is returned to us. In such cases, we will refund it within a reasonable time after the date cancellation takes effect.

FE-7007.1
(4/80)

(CONTINUED ON REVERSE SIDE)

Printed in U.S.A.

12. **Non-Renewal.** We may elect not to renew this policy. If we elect not to renew, a written notice will be delivered to you, or mailed to you at your mailing address shown in the Declarations. The notice will be delivered or mailed by registered mail, certified mail or United States Post Office certificate of mailing at least 60 days before the expiration date of this policy. The notice will include the reason for non-renewal.

07-07-9603-4

DECLARATIONS PAGE

STATE FARM FIRE AND CASUALTY CO.
100 STATE FARM PLACE, BALLSTON SPA, NY
A STOCK COMPANY WITH HOME OFFICE IN
Agent Copy

**NAMED INSURED**
6005-F000
GUNTHER, LENORE M & WILLIAM
16167 VILLA VIZCAYA PL
DELRAY BEACH FL 33446-2344

**PERSONAL LIABILITY UMBRELLA POLICY**

AUTOMATIC RENEWAL - If the POLICY PERIOD is shown as 12 MONTHS, this policy will be renewed automatically subject to the premiums, rules and forms in effect for each succeeding policy period. If this policy is terminated, we will give you and the Mortgagee/Lienholder written notice in compliance with the policy provisions.

| | |
|---|---|
| POLICY PERIOD: | 12 MONTHS |
| EFFECTIVE DATE: | 07/23/96 |
| EXPIRATION DATE: | 07/23/96 |

| COVERAGES | LIMITS OF LIABILITY |
|---|---|
| COVERAGE L - PERSONAL LIABILITY | $ 1,000,000 |
| SELF INSURED RETENTION | NONE |
| COVERAGE U - UNINSURED MOTOR VEHICLE | $ 1,000,000 |

## CERTIFIED

**REQUIRED UNDERLYING INSURANCE POLICIES**

YOU AGREE THAT THE UNDERLYING INSURANCE POLICIES LISTED BELOW:
(1) ARE IN FORCE AND WILL BE CONTINUED IN FORCE FOR AT LEAST THE LIMITS SHOWN.
(2) INSURE ALL LAND MOTOR VEHICLES AND WATERCRAFT OWNED BY, RENTED BY, OR REGULARLY FURNISHED TO YOU

| TYPE OF POLICY (THESE TERMS ARE DEFINED IN THE POLICY) | MINIMUM UNDERLYING LIMITS SINGLE LIMITS OR DUAL LIMITS | | |
|---|---|---|---|
| AUTOMOBILE LIABILITY UNINSURED/UNDERINSURED MOTOR VEHICLE COVERAGE RECREATIONAL MOTOR VEHICLE LIABILITY INCLUDING PASSENGER BODILY INJURY | BODILY INJURY AND PROPERTY DAMAGE COMBINED $ 300,000 | BODILY - $ 100,000 INJURY $ 300,000 PROPERTY DAMAGE - $ 25,000 | EACH PERSON EACH LOSS EACH LOSS |
| PERSONAL RESIDENTIAL LIABILITY | $ 100,000 | BODILY INJURY AND PROPERTY DAMAGE COMBINED | |
| WATERCRAFT LIABILITY | $ 100,000 | BODILY INJURY AND PROPERTY DAMAGE COMBINED | |

FORMS & ENDORSEMENTS
PERSONAL LIABILITY UMBRELLA   FP-7950.1
AMENDATORY ENDORSEMENT        FE-7697.1
POLICY ENDORSEMENT            FE-7728
UNINSURED VEHICLES           FE-7655.1
UNINSURED MOTORIST           FE-7655.1

POLICY PREMIUM   $   155.00

OTHER LIMITS AND EXCLUSIONS MAY APPLY - REFER TO YOUR POLICY

PREPARED
10/15/97
FP-7052.1C
KAS
YOUR POLICY CONSISTS OF THIS PAGE, ANY ENDORSEMENTS AND THE POLICY FORM. PLEASE KEEP THESE TOGETHER.

BY
PSO WILTON
(203) 834-2914

1997

AGENT