## JAMES SANSONE ET AL. *v.* NATIONWIDE MUTUAL FIRE INSURANCE COMPANY

Superior Court      Judicial District of      File No. CV98-0411373
New Haven

Memorandum filed September 24, 1999*

*Fasano, Ippolito & Lee*, for the plaintiffs.

*Law Office of Michael Feldman*, for the defendant.

SILBERT, J. The plaintiffs, James Sansone and Roberta Sansone, filed this three count complaint against the defendant, Nationwide Mutual Fire Insurance Company. Count one alleges that the defendant breached its contract of insurance by not paying for damage to the plaintiffs' residence after a wall collapsed. Count two alleges that the defendant breached its covenant of good faith, and count three alleges that the defendant denied coverage in bad faith. The defendant filed an answer and special defense claiming that the plaintiffs' loss was caused by insect infestation, which is not covered under the applicable insurance policy. The plaintiffs have denied this special defense.

The defendant now seeks summary judgment, arguing that the undisputed facts show that the damage to the plaintiffs' residence was caused by insects and/or wet or dryrot which is excluded from coverage under

---

* Affirmed. *Sansone* v. *Nationwide Mutual Fire Ins. Co.*, 62 Conn. App. 526, 771 A.2d 243 (2001).

the policy. The defendant has provided the affidavit of Kirk Boushie, its claims representative, and a copy of the plaintiffs' homeowners policy of insurance as exhibit A. The defendant also attached exhibit B, which includes a portion of the March 5, 1999 deposition of Domenick Garzone, a professional engineer employed by the defendant, a portion of the December 17, 1998 deposition of Alan B. Tancreti, a public insurance adjuster, and a portion of the March 4, 1999 deposition of Richard A. Mucik, one of the persons who repaired the plaintiffs' property. Finally, the defendant has attached exhibit C, which includes a portion of the December 17, 1998 deposition of Paul Cianci, a structural engineer employed by the defendant.

The plaintiffs filed a memorandum of law in opposition to the defendant's motion for summary judgment, attaching the affidavit of Alan B. Tancreti, and the affidavit of the plaintiff, James Sansone. The plaintiffs do not dispute that there was termite damage located in the header beam, floor joist and wall studs near the doorway between the living room and an enclosed porch of their dwelling, but they claim that the restoration to the other areas of the house was not actually caused by the termites but instead constituted ensuing damages which are included in their coverage. Additionally, the plaintiffs argue that there was a collapse, which is also covered under the applicable policy.

"[Practice Book § 17-49] provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. . . . In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which,

under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact." (Citations omitted; internal quotation marks omitted.) *Hertz Corp.* v. *Federal Ins. Co.*, 245 Conn. 374, 380–81, 713 A.2d 820 (1998).

Summary judgment in the present case hinges on the interpretation of the exclusionary clause in the controlling insurance policy. "It is the function of the court to construe the provisions of the contract of insurance. . . . If the words in the policy are plain and unambiguous the established rules for the construction of contracts apply, the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning, and courts cannot indulge in a forced construction ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties. . . . If, however, the insurance coverage is defined in terms that are ambiguous, such ambiguity is . . . resolved against the insurance company. Where the terms of the policy are of doubtful meaning, the construction most favorable to the insured will be adopted. . . . [T]his rule of construction favorable to the insured extends to exclusion clauses. . . . A necessary predicate to this rule of construction, however, is a determination that the terms of the [exclusion clause] are indeed ambiguous. . . . Thus, a court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . and [t]he fact that the parties advocate different meanings of [an] exclusion clause does not necessitate a conclusion that the language is ambiguous." (Citations omitted; internal quotation marks omitted.) *Peerless Ins. Co.* v. *Gonzalez*, 241 Conn. 476, 481–83, 697 A.2d 680 (1997).

The plaintiffs' homeowners policy covers the plaintiffs' dwelling. It provides in section I, titled "Perils

Insured Against," that the defendant "cover[s] direct physical loss to property . . . except that caused by . . . (6) . . . deterioration . . . wet or dry rot . . . birds, vermin, rodents, insects or domestic animals. . . . Under items 2 through 7, any ensuing loss not excluded is covered."

The plaintiffs argue that they incurred significant ensuing losses related to the actual physical loss from the termite infestation to the header beam, wall studs and floor joist and that they are entitled to coverage for these damages. James Sansone avers in his affidavit that to return the home to its original condition after the termite damage was repaired, the entire family room ceiling needed to be replaced in order that the section which had to be removed to repair the termite damage would match the texture and color of the rest of the ceiling. He further avers that the entire living room required new wood paneling in order to maintain the consistency of the paneling in the room, that the living room carpet and carpet pad had to be replaced, that the sensor alarm and heat feed in the wood paneling had to be replaced with new equipment and that the tongue and groove wood floor in the dining room had to be replaced. The plaintiffs argue that these are "ensuing losses" for which the defendant should compensate the plaintiffs pursuant to the policy.

In construing the policy, the court must determine whether the loss was "caused" by insects and thus excluded or if the loss is an ensuing loss that is not excluded. The policy excludes "direct physical loss" to the premises "caused" by insect infestation. " 'It is well settled that the words "direct cause" ordinarily are synonymous in legal intendment with "proximate cause," a rule applicable to causes involving the construction of an insurance policy.' " *Steiner* v. *Middlesex Mutual Assurance Co.*, 44 Conn. App. 415, 434, 689 A.2d 1154 (1997). Thus, the plaintiffs should not recover for direct

physical loss if the losses were proximately caused by insect infestation.

"In the determination whether a loss is within an exception in a policy, where there is a concurrence of two causes, the efficient cause—the one that sets the other in motion—is the cause to which the loss is to be attributed, though the other cause may follow it and operate more immediately in producing the disaster." (Internal quotation marks omitted.) *Frontis* v. *Milwaukee Ins. Co.*, 156 Conn. 492, 499, 242 A.2d 749 (1968). "[W]hat is meant by proximate cause is not that which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the procuring, efficient, and predominant cause." (Internal quotation marks omitted.) Id., 498. Proximate cause has been defined as "[a]*n actual cause* that is a *substantial factor* in the resulting harm." (Emphasis in original; internal quotation marks omitted.) *Stewart* v. *Federated Dept. Stores, Inc.*, 234 Conn. 597, 606, 662 A.2d 753 (1995). In the present case, the plaintiffs appear to argue that their losses were not caused by the insects themselves, but by the fact that the dwelling was damaged in order to access and repair the insect damage. There was, however, no aggravating activity or event that caused their additional losses other than those losses arising from the repairs necessitated by the damage caused by the insect infestation. Therefore, these losses were proximately caused by the insect infestation and thus are excluded from coverage under the insurance policy.

The plaintiffs also contend, however, that their house suffered a "collapse" due to the loss of structural integrity resulting from the deterioration in the header beam that supports the roof mechanism. The plaintiffs argue that this collapse should be covered as an ensuing loss.

This policy, however, does not make any specific reference to "collapse." It appears to be an "all risk"

policy which covers all loss except for the enumerated exclusions. See J. Draper, "Coverage Under All-Risk Insurance," 30 A.L.R.5th 170 (1995). The plaintiffs argue that "[r]ecovery will be allowed under a policy affording 'all risks' coverage for all losses of a fortuitous nature not resulting from misconduct or fraud, unless the policy contains a specific provision excluding loss from coverage. The term 'all risk' is not to be given a restrictive meaning." *United States Surgical Corp.* v. *United States Fire Ins.*, Superior Court, judicial district of New Haven, Docket No. 282011 (October 5, 1990) (*Downey, J.*).

The plaintiffs rely on *Beach* v. *Middlesex Mutual Assurance Co.*, 205 Conn. 246, 532 A.2d 1297 (1987), in which the Connecticut Supreme Court interpreted an insurance policy that made specific reference to its coverage in case of collapse: " '[This policy] does not insure against loss . . . [u]nder Coverages A and B . . . 1. by . . . settling, cracking, shrinkage, bulging or expansion of pavements, patios, foundations, walls, floors, roofs or ceilings . . . unless . . . *collapse* of a building . . . not otherwise excluded *ensues*, then this policy shall cover only such ensuing loss.' " (Emphasis added.) Id., 250. The court in *Beach* defined "ensue" as meaning "to follow as a chance, likely, or necessary consequence: result . . . to follow in chronological succession." (Internal quotation marks omitted.) Id., 251–52. The court stated that "[b]y its reference to a 'collapse' that 'ensues,' the policy in this case can reasonably be understood to have contemplated coverage for a 'collapse' that follows consequentially from excluded activity." Id., 252. Thus, the plaintiffs in the present case argue that if a collapse occurred, they should be able to recover under the applicable policy for losses proximately caused by the collapse, even if insect infestation, an excluded activity, caused the collapse.

"Collapse" has been defined so as to "include coverage for any substantial impairment of the structural integrity of a building." Id. The court in *Beach* noted that the determination of whether a plaintiff has proven such impairment is a matter of fact. Id., 253. The defendant's expert, Paul Cianci, stated in his deposition that he felt that he would not even come close to considering the plaintiffs' damages an imminent collapse. The plaintiffs' expert, Alan Tancreti, however, averred that "[b]ecause of the deterioration of the header beam, there was an impairment to the structural integrity of the roof, thereby subjecting the dwelling to a collapse." Because this fact is in dispute, the plaintiffs contend that summary judgment would be inappropriate.

The plaintiffs' argument would be persuasive if their policy made specific reference to collapse that ensues from otherwise excluded activity, as was the case in *Beach*. The problem with the plaintiffs' reliance on *Beach*, however, is that while the policy in that case made specific reference to its coverage for collapse, there is no such provision in the defendant's policy at issue here. Whether the loss claimed is properly denominated a "collapse" is therefore immaterial. For purposes of the policy at issue here, the loss was the proximate result of termite damage and is therefore excluded.

Accordingly, the defendant's motion for summary judgment is granted.