# NEW LONDON COUNTY MUTUAL INSURANCE COMPANY *v.* KARLEEN ZACHEM ET AL.
## (AC 34538)

Robinson, Alvord, and Pellegrino, Js.

Argued March 13—officially released August 20, 2013

*Theodore W. Heiser*, with whom was *Catherine H. Heiser*, for the appellants (defendants).

*Susan L. Miller*, with whom, on the brief, was *Margaret A. Casey*, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendants, Karleen Zachem and Phyllis Knutson, appeal from the trial court's declaratory judgment holding that the plaintiff, New London County Mutual Insurance Company, has no duty to provide coverage under an insurance policy with the defendants for a claimed loss arising from an explosion and fire. The defendants claim that the court improperly concluded that their loss was excluded from coverage

under a vandalism exception in the policy based on its erroneous determinations that (1) the defendants' property had been vacant for more than thirty consecutive days at the time of the explosion and fire, and (2) an "ensuing loss" provision in the policy was inapplicable as an alternative basis for coverage. We affirm the judgment of the trial court.

We first set forth the following procedural history and relevant facts, which either are undisputed or were found by the trial court. The defendants are the owners of real property located on Route 2 in Preston (premises). A single family house and a freestanding garage were located on the premises; the defendants maintained the house as a rental property. The plaintiff issued an insurance policy to the defendants that included coverage for the house and the garage. The section of the insurance policy entitled "Perils Insured Against," provides in relevant part: "We insure against risk of direct loss to property described in Coverages A [Dwelling] and B [Other Structures] only if that loss is a physical loss to property."[1] Following that provision is a list of exceptions to coverage, which provides in relevant part: "[W]e do not insure loss . . . caused by . . . vandalism and malicious mischief, theft or attempted theft if the dwelling has been vacant for more than [thirty] consecutive days immediately before the loss" (vandalism exception). The policy also contains the following provision related to the list of exceptions to coverage, including the vandalism exception: "[A]ny ensuing loss to property described in Coverages A and B not excluded or excepted in this policy is covered" (ensuing loss provision). The policy does not contain definitions for the terms "vacant" or "ensuing loss."

A property loss occurred at the premises on September 11, 2008, while the insurance policy between the

---

[1] It is not disputed that the house is property described in Coverage A and that the unattached garage is property described in Coverage B.

parties was in full effect. An unidentified intruder stole copper pipes from the house, including breaking and removing a copper propane gas line that led to a clothes dryer in the basement of the house.[2] The basement filled with propane gas, which ultimately exploded and caused a fire that destroyed the house.

No one had resided at the house since July, 2007,[3] although Peter Knutson[4] periodically visited to do remodeling or maintenance work. He also stored equipment and materials related to his fencing business in the unattached garage. No one was living at the house at the time of the claimed loss, and the house was not suitable for habitation at that time. The fire marshal who investigated the fire reported that the house did not show any signs of recent occupation at the time of the gas explosion.

The defendants filed a claim for coverage of their loss with the plaintiff. The plaintiff took the position that, pursuant to the terms of the policy, it was not liable because the claimed loss was caused by vandalism or theft, and the subject premises had been vacant for more than thirty consecutive days immediately preceding the loss. The plaintiff then filed this declaratory judgment action asking the court for a ruling that it had no duty to provide coverage for the defendants' claimed loss arising from the September 11, 2008 explosion and fire. The parties filed cross motions for summary judgment, which the court denied. The matter proceeded to a one day trial to the court, following which the court asked for supplemental briefing.

---

[2] It is not disputed that the breaking and removing of copper pipes from the house was an act of vandalism or theft as those terms are used in the policy's vandalism exception.

[3] The record reveals that after the last tenant moved out, the defendants began refurbishing the house with the intent to list it for sale.

[4] Peter Knutson is Phyllis Knutson's husband and Karleen Zachem's father.

On March 29, 2012, the court issued a memorandum of decision. The court found on the basis of relevant case law and the evidence presented that the subject premises had been vacant for more than thirty consecutive days at the time of the explosion and fire and, accordingly, that the defendants' loss fell squarely within the vandalism exception in the insurance policy. The court also rejected the defendants' argument that the explosion and fire was an "ensuing loss" and, thus, a covered loss under the policy despite the vandalism exception. The court determined that the defendants failed to meet their burden of establishing that the policy's ensuing loss provision was applicable in the present case. The court rendered a declaratory judgment holding that the plaintiff was not liable for the loss suffered by the defendants. This appeal followed.

"The general principles that guide our review of insurance contract interpretations are well settled. [C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo. . . . An insurance policy is to be interpreted by the same general rules that govern the construction of any written contract. . . . In accordance with those principles, [t]he determinative question is the intent of the parties, that is, what coverage the . . . [insured] expected to receive and what the [insurer] was to provide, as disclosed by the provisions of the policy. . . . If the terms of the policy are clear and unambiguous, then the language, from which the intention of the parties is to be deduced, must be accorded its natural and ordinary meaning. . . . Under those circumstances, the policy is to be given effect according to its terms. . . . When interpreting [an insurance policy], we must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result. . . .

"In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . . Similarly, any ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms. . . . As with contracts generally, a provision in an insurance policy is ambiguous when it is reasonably susceptible to more than one reading. . . . Under those circumstances, any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Internal quotation marks omitted.) *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, 309 Conn. 1, 9–10, 68 A.3d 1121 (2013).

"Finally, a trial court's resolution of factual disputes that underlie coverage issues is reviewable on appeal subject to the clearly erroneous standard. . . . Such a finding of fact will not be disturbed unless it is clearly erroneous in view of the evidence and pleadings in the whole record . . . . [A] finding is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) *National Grange Mutual Ins. Co.* v. *Santaniello*, 290 Conn. 81, 90, 961 A.2d 387 (2009).

I

The defendants first claim that the court concluded that their loss was excluded from coverage pursuant to the policy's vandalism exception on the basis of an erroneous determination that their house had been vacant for more than thirty consecutive days at the time of the claimed loss. In particular, the defendants argue that the term "vacant" as used in the policy's vandalism

exception is ambiguous and that in determining whether the subject premises was vacant, the court applied an overly restrictive definition that was inconsistent with the parties' intent. We do not agree.

To determine the common, natural, and ordinary meaning of an undefined term, it is proper to turn to the definition found in a dictionary. See *DeCarlo & Doll, Inc.* v. *Dilozir*, 45 Conn. App. 633, 648–49, 698 A.2d 318 (1997). Random House Webster's Unabridged Dictionary defines "vacant" as "having no contents; empty" and, with regard to a dwelling specifically, as "having no tenant and devoid of furniture, fixtures." Random House Webster's Unabridged Dictionary (2d Ed. 2001). Similarly, Webster's Third New International Dictionary defines "vacant" as that term pertains to premises as "premises which are not lived in and from which the furniture and fixtures have been removed." Webster's Third New International Dictionary (2002). As noted by the trial court, Black's Law Dictionary defines "vacant" as generally meaning "empty; unoccupied." Black's Law Dictionary (9th Ed. 2009).[5] Although no appellate court in this state has had the opportunity to construe the term "vacant" in the context of an insurance policy exception to coverage, our research reveals that courts in other jurisdictions that have considered the very issue now before us have applied a definition very similar to the definition applied by the trial court, and which,

---

[5] In addition to considering the dictionary definition, the court analogized on the basis of our case law holding that commercial property is not "vacant" if items of substantial value remained on the premises; see *Bishop's Corner Associates Ltd. Partnership* v. *Service Merchandise Co.*, 45 Conn. Supp. 443, 453–54, 720 A.2d 531 (1997), aff'd, 247 Conn. 192, 718 A.2d 966 (1998); that a dwelling is vacant when it does not contain "any items suitable for habitation." Because our review of the meaning of the term "vacant" as used in the policy is de novo, we need not consider the propriety of the court's analogy, although we note that it comports with the dictionary definitions suggesting that a "vacant" house is one that is devoid of furniture and fixtures.

although not binding on this court, we find persuasive and consistent with the aforementioned dictionary definitions. See, e.g., *American Mutual Fire Ins. Co.* v. *Durrence,* 872 F.2d 378, 379 (11th Cir. 1989) (loss excluded from coverage under vacancy clause of homeowner's policy because house "lacked amenities minimally necessary for human habitation"); *Estes* v. *St. Paul Fire & Marine Ins. Co.,* 45 F. Supp. 2d 1227, 1230 (D. Kan. 1999) (holding in context of dwelling insurance policy exclusion for vandalism that "plain and ordinary meaning of 'vacant' is that the structure is not lived in and lacks the basic amenities for human habitation").

The defendants contend that a layperson would not have understood that the vacancy exclusion could be in effect when Peter Knutson was making daily visits to the premises, mostly to the garage for business related activities, but sometimes to conduct maintenance activities around the house.[6] The defendants urge us to adopt a definition such that a dwelling could be deemed "vacant" only upon a complete abandonment of the entire premises, in effect substituting the term "abandoned" for "vacant." That, however, would not comport with the dictionary definitions of vacant as set forth previously. Further, adopting the defendants' definition would require us to ignore or to render superfluous other language in the policy, which we cannot do. See *R.T. Vanderbilt Co.* v. *Continental Casualty Co.,* 273 Conn. 448, 468–69, 870 A.2d 1048 (2005).

The vandalism exception expressly provides that losses caused by vandalism or theft are not covered "if *the dwelling* has been vacant for more than [thirty]

---

[6] The vandalism exception provides that "[a] dwelling being constructed is not considered vacant." Although the defendants state in their brief that during the period that the house was unoccupied, Peter Knutson performed "refurbishing work on the interior of the house," the defendants never argued that the house was not vacant for the thirty days prior to the explosion because it was "being constructed."

consecutive days." (Emphasis added.) The "dwelling" is described in the policy as the structure used principally for dwelling, meaning the house, including any attached structures. The defendants' garage is unattached and, thus, not part of the dwelling. Peter Knutson's daily visits to the garage in support of his fencing business as well as his upkeep of the land surrounding the garage and house only would be relevant to a consideration of whether the *dwelling* was vacant if we were to substitute the word "premises" for the word "dwelling," which we cannot do. See *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, supra, 273 Conn. 468–69. We further note that common sense suggests that although a dwelling might for different periods of time become vacant and then later reoccupied and refurnished, a property that has been abandoned outright by an insured likely would remain so, negating any need for, and, thus, rendering superfluous, the qualifying language in the policy that the dwelling be vacant "for more than [thirty] consecutive days."

Viewed in context of the policy as a whole, we conclude that the term "vacant" as used in the vandalism exception is susceptible to only one reading and, therefore, is not ambiguous. Consistent with the intent of the parties, a vacant dwelling is one that is unoccupied and does not contain items ordinarily associated with habitation, such as furniture, fixtures or personal property. The definition of "vacant" applied by the court was therefore legally and logically correct. Having so concluded, we are left to consider only whether the court's finding that the defendants' house had been vacant for more than thirty consecutive days prior to the claimed loss is supported by the record. We conclude that it is.

It is undisputed that no one had lived in the house for more than a year prior to the claimed loss. Thus, it

was unoccupied during the relevant time period. Further, the court expressly found that "the dwelling did not contain any items suitable for habitation." The defendants do not challenge that factual finding on appeal.[7] Although the court does not expressly find that the house lacked items ordinarily associated with habitation for more than thirty days prior to the claimed loss, that finding is implicit, and the defendants do not raise any argument to the contrary.[8] Accordingly, we conclude that the court's finding that the house was vacant for more than thirty days prior to the loss at issue is amply supported by the record.

## II

The defendants also claim that the court erred in concluding that the defendants had failed to establish that the ensuing loss provision of their policy was applicable to their claim thus removing it from the policy's vandalism exception. Specifically, the defendants assert that in considering their ensuing loss claim, the court applied an improper proximate cause analysis that was first set forth in *Sansone* v. *Nationwide Mutual Fire Ins. Co.*, 47 Conn. Supp. 35, 39–41, 770 A.2d 500 (1999), aff'd, 62 Conn. App. 526, 527, 771 A.2d 243 (2001) (concluding trial court analysis was "consistent with our applicable law and precedents" and adopting court's "well reasoned decision"). The plaintiff argues that the court correctly determined that the policy's ensuing loss provision did not apply, arguing that "the ensuing

---

[7] Even if they had challenged the finding, our review of the record reveals that the court's finding is amply supported by testimony from the fire marshal who investigated the explosion, as well as from Peter Knutson and the defendants. The testimony established that, at all relevant times, the house was without any furniture, including bedding, that it did not have a stove or refrigerator, that there was no personal property in the house and that the first floor toilet was not connected.

[8] Our review of the record also reveals that, with respect to the contents of the house, Phyllis Knutson testified that it was in the same condition in terms of content for more than thirty days prior to the explosion.

loss provision only applies when an excluded peril sets in motion a covered peril, and the trial court determined as a factual matter that all of the damage to the dwelling was caused by the excluded peril of vandalism, malicious mischief, and theft. Thus, there [was] no second, covered peril to trigger the ensuing loss provision." For the following reasons, we find no error with the court's conclusion that the defendants' claim was not entitled to coverage under the policy's ensuing loss provision.

In their appellate brief, the defendants engage in an elaborate analysis of how courts correctly should interpret and apply ensuing loss provisions found in insurance policies and why the legal analysis employed by the court in *Sansone* v. *Nationwide Mutual Fire Ins. Co.*, supra, 47 Conn. Supp. 35, which was relied on and followed by the court in the present case, was incorrect. Although we find merit in much of the defendants' discussion of the issue, we nevertheless are bound, as was the trial court, to follow the legal framework established in *Sansone*.

In *Sansone*, the plaintiff homeowners filed an action against their homeowners insurance provider claiming that the defendant insurer had breached the contract of insurance and had acted in bad faith by not paying for certain damages to the covered residence after a wall collapsed. Id., 35. The insurer filed an answer, special defense, and later a motion for summary judgment, arguing that the homeowners' claimed loss was caused by termites and that insect infestation was excepted from coverage under the policy at issue. Id., 35–36. The homeowners did not dispute that there was damage caused by termites to a header beam, floor joist and wall studs near a doorway between the living room and an enclosed porch of their dwelling, but claimed that damage to other areas of the house were not actually caused by the termites but by the resulting restoration necessary to return the house to its original

condition and that that damage constituted an ensuing loss that was not excluded from coverage.[9] Id., 36.

The court, in deciding in favor of the insurer on its motion for summary judgment, noted that "[i]n construing the policy, [it] must determine whether the loss was 'caused' by insects and thus excluded or if the loss is an ensuing loss that is not excluded." Id., 38. It next noted that "[t]he policy excludes 'direct physical loss' to the premises 'caused' by insect infestation. It is well settled that the words 'direct cause' ordinarily are synonymous in legal intendment with 'proximate cause,' a rule applicable to causes involving the construction of an insurance policy." Id.

The court concluded that the homeowners could not recover "for direct physical loss if the losses were proximately caused by insect infestation." Id., 38–39. The court reasoned: "In the determination [of] whether a loss is within an exception in a policy, where there is a concurrence of two causes, the efficient cause—the one that sets the other in motion—is the cause to which the loss is to be attributed, though the other cause may follow it and operate more immediately in producing the disaster. . . . [W]hat is meant by proximate cause is not that which is last in time or place, not merely that which was in activity at the consummation of the injury, but that which is the procuring, efficient, and predominant cause. . . . Proximate cause has been defined as [a]n actual cause that is a substantial factor in the resulting harm. . . . [The homeowners] appear

---

[9] The ensuing loss provision at issue in *Sansone* was very similar to the one at issue in the present appeal. The policy in *Sansone* covered the homeowners' dwelling and provided in a section titled "Perils Insured Against," that the policy "cover[s] direct physical loss to property . . . except that caused by . . . birds, vermin, rodents, insects or domestic animals." (Internal quotation marks omitted.) *Sansone* v. *Nationwide Mutual Fire Ins. Co.*, supra, 47 Conn. Supp. 37–38. As to that and several other exceptions from coverage, the policy later provided that "any ensuing loss not excluded is covered." (Internal quotation marks omitted.) Id.

to argue that their losses were not caused by the insects themselves, but by the fact that the dwelling was damaged in order to access and repair the insect damage. There was, however, no aggravating activity or event that caused their additional losses other than those losses arising from the repairs necessitated by the damage caused by the insect infestation. Therefore, these losses were proximately caused by the insect infestation . . . ." (Internal quotation marks omitted.) Id., 39.

The Appellate Court panel that considered the homeowners' appeal in *Sansone* adopted the legal analysis of the trial court as being well reasoned and consistent with the law in this state. *Sansone* v. *Nationwide Mutual Fire Ins. Co.*, supra, 62 Conn. App. 527. Accordingly, we are bound by the reasoning of *Sansone.* As we have clarified on a number of occasions, "this court's policy dictates that one panel should not, on its own, reverse the ruling of a previous panel. The reversal may be accomplished only if the appeal is heard en banc. Before a case is assigned for oral argument, the chief judge may order, on the motion of a party or suo moto, that a case be heard en banc. Practice Book § 70-7 (a)." (Internal quotation marks omitted.) *Boccanfuso* v. *Conner*, 89 Conn. App. 260, 285 n.20, 873 A.2d 208, cert. denied, 275 Conn. 905, 882 A.2d 668 (2005). The defendants in the present case did not ask this court to hear their appeal en banc for the purpose of reversing our decision in *Sansone.* Because *Sansone* remains good law, we cannot attribute error to the trial court's utilization of the proximate cause analysis set forth therein in considering whether the defendants' claimed loss was caused by the vandalism and theft of the copper pipes or instead was an ensuing loss.

In applying the *Sansone* holding to the facts of the present case, the court stated: "[T]he fire investigator's report concluded that the 'fire and explosion were a direct result from the intentional act of removing the

copper propane lines.' Pursuant to the rationale discussed in the *Sansone* decision, the efficient cause of the explosion is the removal of the copper propane lines, which constitutes 'the cause to which the loss is to be attributed,' although the 'other cause,' here, the spark from the water heater, 'may follow it and operate more immediately in producing the disaster.' *Sansone* v. *Nationwide Mutual Fire Ins. Co.*, supra, 47 Conn. Supp. 39. The spark that set [off] the explosion does not constitute a separate and independent hazard from which the defendants' loss ensued. The defendants have not carried their burden of establishing that the 'ensuing loss' exception is applicable in the present case." The defendants have raised no claim of error as to the trial court's application of the *Sansone* holding to the facts of this case, contending only that the *Sansone* holding was legally flawed and should not have formed the basis for the trial court's decision. "It is fundamental that the scope of appellate review in a given appeal is defined by the claims of error actually raised by the parties. Our Supreme Court consistently has admonished this court for stepping beyond that threshold. As it recently stated, [w]e long have held that, in the absence of a question relating to subject matter jurisdiction, the Appellate Court may not reach out and decide a case before it on a basis that the parties never have raised or briefed." (Internal quotation marks omitted.) *Baldwin* v. *Curtis*, 105 Conn. App. 844, 849 n.2, 939 A.2d 1249 (2008). Accordingly, we will not engage in further review of the court's decision.

The judgment is affirmed.

In this opinion the other judges concurred.