******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

DOMINGOS GABRIEL ET AL. *v.* MOUNT VERNON
FIRE INSURANCE COMPANY
(AC 40174)

Sheldon, Elgo and Eveleigh, Js.

*Syllabus*

The named plaintiff, who had sustained severe injuries when a van in which
he was a passenger went off the road and crashed into a building, and
his wife brought this subrogation action seeking to recover damages
under the terms of a $1 million umbrella automobile insurance policy
issued by the defendant to its insured, P, the operator of the vehicle
involved in the crash. At the time of the accident, P was driving the van
for his employer, P Co., and the van was covered by a primary business
insurance policy issued by N Co. to P Co., which had a policy limit of
$300,000. Prior to commencing the present action, the plaintiffs recov-
ered judgments in the total amount of $1.8 million from P and P Co.,
and N Co. paid the plaintiffs $300,000 toward their judgments. The
defendant, however, refused to apply its $1 million umbrella coverage
to the unpaid balance of the plaintiffs' judgments on the ground that
the primary insurance policy provided bodily injury liability coverage
of less than $500,000, which the defendant claimed was not sufficient to
trigger excess coverage. P subsequently assigned the umbrella insurance
policy to the plaintiffs, who commenced the present action. After the
case was tried on a stipulation of facts, the trial court rendered judgment
in favor of the plaintiffs, finding that the umbrella insurance policy
declared unambiguously that the failure to maintain underlying insur-
ance policies covering the loss that meet minimum limits would not
invalidate the policy but would merely adjust the net loss to be paid by
the defendant. On the defendant's appeal to this court, *held*:

1. The trial court did nor err in finding that the business insurance policy
qualified as underlying insurance, thereby triggering excess coverage, as
the umbrella insurance policy unambiguously provided excess coverage
even when the insured's primary policy is maintained at a lower level
than specified: the failure to maintain the proper amount of primary
coverage generally does not invalidate the excess coverage, the umbrella
insurance policy's terms did not override that general rule, as there was
no language indicating that a primary policy with a minimum coverage
of $500,000 was a condition precedent to insurance coverage, and even
if the policy included such language, the savings clause anticipated
inadequate primary coverage and specifically provided that, in such a
case, the defendant is not responsible for any gap in coverage up to the
$500,000 limit; moreover, the defendant could not prevail on its claim
that the savings clause, which provided that the defendant is not required
to provide coverage if the insured fails to maintain his underlying insur-
ance, was inapplicable because it only contemplated situations in which
an insured has underlying insurance at the requisite level when the
umbrella insurance policy becomes active and fails to keep up the
underlying policy, as that claim hinged on the meaning of the term
"maintain" as used in the policy, the defendant's definition of "maintain"
was not the only natural and ordinary meaning of that word and was
not likely to align with a layperson's reasonable reading of the word and
the policy provision, and the plaintiffs' interpretation that to "maintain"
insurance means to obtain insurance reflected an insured's reason-
able expectations.

2. The trial court properly determined that the umbrella insurance policy's
business exclusion did not apply because qualifying underlying insur-
ance existed at the time of the accident; the policy's business exclusion,
which eliminated coverage of a loss caused by the insured's business
or business property unless underlying insurance provided coverage for
the loss, was inapplicable because underlying insurance, namely, the
business insurance policy, existed at the time of the accident, and that
policy qualified as underlying insurance even though the coverage was
for $300,000 instead of for $500,000 or more.

3. The defendant could not prevail on its claim that the trial court erred

in its determination of damages, which was based on the defendant's assertion that the court improperly denied it a $200,000 credit to be charged against the sum that the defendant owed toward the unsatisfied portion of the plaintiffs' underlying judgments; nothing in the umbrella insurance policy provided for such a credit, the defendant already received the benefit of a $200,000 credit because it was obligated to pay only for recovery exceeding $500,000, and the cases on which the defendant relied to support its claim were distinguishable from the present case in that they concerned a theory of recovery that the plaintiffs were not pursuing.

Argued September 17—officially released November 20, 2018

*Procedural History*

Action to recover proceeds allegedly due under an umbrella automobile insurance policy issued by the defendant, and for other relief, brought to the Superior Court in the judicial district of Fairfield and tried to the court, *Krumeich, J.*, on a stipulation of facts; judgment for the plaintiffs as to liability; thereafter, the court denied the defendant's motion to open and vacate the judgment; subsequently, the court granted in part the plaintiffs' amended motion to assess damages and for postjudgment interest, and the defendant appealed to this court. *Affirmed*.

*Dennis M. Carnelli*, with whom were *Emily McDonough Souza* and, on the brief, *Joseph J. Andriola*, for the appellant (defendant).

*Michael S. Burrell*, with whom were *Joseph P. Krevolin* and, on the brief, *Joram Hirsch*, for the appellees (plaintiffs).

*Opinion*

EVELEIGH, J. The defendant, Mount Vernon Fire Insurance Company, appeals from the judgment of the trial court in favor of the plaintiffs, Domingos Gabriel and his wife, Laurinda Gabriel.[1] On appeal, the defendant argues that the trial court erred in (1) finding that the plaintiffs' primary insurance policy qualified as an underlying policy entitling the plaintiffs to excess coverage; (2) finding that the business exception of the plaintiffs' umbrella insurance policy did not apply; and (3) its determination of damages. We affirm the judgment of the trial court.

The following stipulated facts and procedural history are relevant to the resolution of this appeal. On September 6, 2011, at approximately 1 p.m., Domingos Gabriel was the passenger in a van operated by Domingos Pires, on Route 58 in Easton, Connecticut, that went off the road and crashed into a building. The accident caused severe injuries to Domingos Gabriel, including injuries to his spine, which rendered him permanently wheelchair bound and severely limited the use of his arms. At the time of the accident, Pires was driving the van for D.A.J., LLC, doing business as Pools Plus, Inc. (Pools Plus), a pool maintenance company. Pires was employed by Pools Plus and his wife, Ana Pires, was a principal in the company.

When the accident occurred, Pires was insured under a $1 million umbrella liability insurance policy (policy), issued by the defendant. The van was covered by a primary business insurance policy issued by National Grange Mutual Insurance Company (NGM) to Pools Plus. The NGM policy was effective from January 1, 2008 through September 7, 2011, and had a policy limit of $300,000.

Domingos Gabriel brought actions, in 2012, against Pires and, in 2013, against Pools Plus to recover damages for his injuries and losses. Laurinda Gabriel, was also a plaintiff in those actions and sought to recover damages for loss of consortium. The plaintiffs recovered judgments in the total amount of $1,800,000 from Pires and Pools Plus.[2] NGM paid the plaintiffs $300,000 toward their judgments.[3] The defendant, however, refused to apply its $1,000,000 umbrella coverage to the unpaid balance of the plaintiffs' judgments. The defendant denied coverage because "the NGM policy provided bodily injury liability coverage of less than $500,000," which, the defendant argues, was not sufficient to trigger excess coverage.

After the defendant denied Pires' claim, Pires assigned the policy to the plaintiffs.[4] The plaintiffs then commenced the present action to enforce the policy and to recover the excess coverage from the defendant. The trial court tried the case based on stipulated facts. On November 16, 2016, the court found in favor of the

plaintiffs, stating: "[T]he policy declares unambiguously [that] the failure to maintain underlying policies covering the loss that meet minimum limits would not invalidate the policy but merely adjusts the net loss to be paid by the insurer." This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before analyzing the merits of the defendant's claims on appeal, we set forth the applicable standard of review. "[C]onstruction of a contract of insurance presents a question of law for the court which this court reviews de novo." (Internal quotation marks omitted.) *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, 311 Conn. 29, 37, 84 A.3d 1167 (2014). Because all of the defendant's claims on appeal relate to an interpretation of the policy, our review is plenary.

I

The defendant first argues that the court erred in finding that the NGM policy qualified as "underlying insurance," thereby triggering excess coverage. Specifically, the defendant argues that applicable "underlying insurance" never existed. The plaintiffs argue that the trial court's finding was correct because failing to obtain a primary policy with a $500,000 minimum did not invalidate the policy; rather, it shifted the $200,000 gap in coverage[5] to be borne by the insured. We agree with the plaintiffs.

The following well established legal principles regarding the interpretation of insurance contracts are relevant to this claim. "It is axiomatic that a contract of insurance must be viewed in its entirety, and the intent of the parties for entering it derived from the four corners of the policy. . . . The policy words must be accorded their natural and ordinary meaning . . . [and] any ambiguity in the terms of an insurance policy must be construed in favor of the insured because the insurance company drafted the policy." (Citation omitted; internal quotation marks omitted.) *Imperial Casualty & Indemnity Co.* v. *State*, 246 Conn. 313, 324–25, 714 A.2d 1230 (1998). Additionally, "the appropriate viewpoint from which to read the policy . . . is that of the insured . . . ." *National Grange Mutual Ins. Co.* v. *Santaniello*, 290 Conn. 81, 99, 961 A.2d 387 (2009). "When interpreting [an insurance policy], [the court] must look at the contract as a whole, consider all relevant portions together and, if possible, give operative effect to every provision in order to reach a reasonable overall result." (Internal quotation marks omitted.) *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, supra, 311 Conn. 38.

The policy at issue is an umbrella insurance policy. Umbrella policies are meant to provide an insured with excess coverage when his or her primary policy or policies have been exhausted. See *Heyman Associates*

*No. 1* v. *Ins. Co. of Pennsylvania*, 231 Conn. 756, 760 n.3, 653 A.2d 122 (1995). Policies that provide excess coverage usually "[require] the insured to maintain a lower level of insurance coverage at a stated monetary level." 15 L. Russ & T. Segalla, Couch on Insurance (3d Ed. 2005) § 220:35. When the insured's primary policy is maintained below a stated monetary level, "[g]enerally, depending upon the wording of the policy, the excess insurer's obligation remains the same as though the underlying coverage was maintained at the proper level." Id. In the absence of policy terms to the contrary, "[t]he failure to maintain the proper amount of primary coverage does not invalidate the excess coverage." Id.

The defendant claims that the policy's terms override the general rule by expressly providing that the failure to obtain a primary policy with the requisite minimum coverage invalidates the policy. We disagree. Three provisions of the policy, in particular, are relevant to this argument. First, § I (R) defines underlying insurance, in relevant part, as "the policy with the greater limit of . . . [t]he limit shown for that policy in the DECLARATIONS in Item 6., Required Underlying Insurance Coverage . . . ." Second, item 6 on the policy declarations page reads as follows: "Required Underlying Insurance Coverage: You agree that the higher of the MINIMUM UNDERLYING LIMITS below . . . (1) is in force and will continue in force; and (2) insures all . . . automobiles . . . owned by, leased or regularly furnished to you." Third, § IV of the policy provides, in relevant part, as follows: "These are things you must do for us. We may not provide coverage if you do not . . . [A] . . . maintain your *underlying insurance*. You agree to maintain all insurance policies affording in total the coverage and the greater of the limits shown in the DECLARATIONS in Item 6., Required Underlying Insurance Coverages . . . . If Required Underlying Limits are not maintained, or are not maintained at the greater of the limit of liability shown in Item 6., Required Underlying Insurance Coverages . . . you will be responsible for paying the amount of loss or loss adjustment expense that would have been paid by that policy had its full limit of liability been available. . . . Your failure to comply with the foregoing paragraphs *will not invalidate this policy*, but in the event of such failure, we shall be liable under this policy for indemnity and/or defense expense only to the extent that we would have been liable had you complied with these obligations." (Emphasis altered.)

Looking at the four corners of the policy from the viewpoint of the insured, there is no language indicating that a primary policy with minimum coverage of $500,000 is a condition precedent to insurance coverage. Furthermore, an insured would not understand item 6 of the declaration page, which reads, "[y]ou agree that the higher of the MINIMUM UNDERLYING LIMITS below . . . is in force and will continue in force," com-

bined with the schedule below the item, to mean that he or she has to obtain primary insurance at $500,000 to make his or her excess policy effective.

Even if we assume, arguendo, that the policy clearly indicated that existing primary insurance with a limit of $500,000 is a prerequisite to excess coverage, the defendant's argument is undercut by the savings clause in § IV (A).[6] As stated in the preceding paragraph, § IV (A) provides in relevant part: "Your failure to comply with the foregoing paragraphs will not invalidate this policy, but in the event of such failure, we shall be liable under this policy for indemnity and/or defense expense only to the extent that we would have been liable had you complied with these obligations." Although the defendant argues that the failure to obtain primary coverage at the requisite level bars excess coverage, the savings clause anticipates inadequate primary coverage and specifically provides for such an event. If the policy was conditioned on obtaining "underlying insurance" at a specified level, such a clause would be unnecessary. To adopt the defendant's interpretation of the savings clause would be to read it out of the contract almost entirely, which undermines the principle that a court is to read a contract so as to give effect to all provisions therein. See *Lexington Ins. Co.* v. *Lexington Healthcare Group, Inc.*, supra, 311 Conn. 38. It is clear, therefore, that the clause listed in § IV (A) means that the defendant is not responsible for any gap in coverage up to the $500,000 limit.

The defendant argues that the savings clause in § IV (A) is inapplicable because it only contemplates situations in which an insured has "underlying insurance" at the requisite level when the umbrella policy becomes active and fails to keep up the underlying policy. This argument hinges on the meaning of the word "maintain." The defendant argues that "maintain" means only to keep up something that is already in existence. The plaintiffs counter that this definition is overly narrow and that there is nothing in the policy to preclude an insured from reasonably understanding "maintain" insurance to mean obtain insurance.

Because the word "maintain" is not defined in the policy, the term should be accorded its natural and ordinary meaning. See *New London County Mutual Ins. Co.* v. *Zachem*, 145 Conn. App. 160, 166, 74 A.3d 525 (2013). Additionally, "[i]t is a basic principle of insurance law that policy language will be construed as laymen would understand it and not according to the interpretation of sophisticated underwriters . . . . [T]he policyholder's expectations should be protected as long as they are objectively reasonable from the layman's point of view." (Internal quotation marks omitted.) *R.T. Vanderbilt Co.* v. *Continental Casualty Co.*, 273 Conn. 448, 462–63, 870 A.2d 1048 (2005). While the defendant's definition of "maintain" is one possible

meaning of the term, it is not likely to align with a layperson's reasonable reading of the word and the policy provision. Under the defendant's interpretation of "maintain," an insured would be barred from claiming excess coverage if the insured obtained a primary policy with the requisite limit just one day after procuring umbrella coverage, but before an accident for which the insured seeks coverage. We conclude, therefore, that the plaintiffs' understanding of "maintain" reflects an insured's reasonable expectations, and that the defendant's definition is not the only natural and ordinary meaning of the word.

In *Israel* v. *State Farm Mutual Automobile Ins. Co.*, 259 Conn. 503, 509, 789 A.2d 974 (2002), our Supreme Court interpreted a similar savings clause in an umbrella insurance policy. The court in *Israel* held that the umbrella policy at issue was ambiguous because it contained two inconsistent clauses. Id., 512. One provision of the policy in *Israel* "indicate[d] that in the event of an insured's failure to maintain underlying coverage, the insured will be responsible for any loss up to the amount of the required underlying coverage before the umbrella takes effect." Id., 509. Another provision of the policy provided that "the insured forfeits umbrella coverage completely if he or she does not maintain the requisite underlying coverage." Id. Because "it [was] not possible to give effect to both of these provisions in a manner that resolves the ambiguity created by the policy language"; id., 510; the court in *Israel* construed the umbrella policy against the insurance company that drafted the policy and "in a manner that affords coverage to the insured." Id., 512. In so doing, the court determined that the umbrella policy provided excess coverage to the insured. Id.

Unlike the insurance policy in *Israel*, the policy in the present case does not contain contradictory provisions and, therefore, is not ambiguous. The provisions in the policy indicate that a gap in coverage will not invalidate the policy. Moreover, unlike the policy in *Israel*, the policy in the present case does not provide that the failure to maintain underlying insurance forfeits the entire umbrella policy. We conclude, therefore, that unlike the policy in *Israel*, the policy in the present case unambiguously provides excess coverage, even when the insured's primary policy is maintained at a lower level than specified.

## II

The defendant's second claim on appeal is that, even if the policy provided excess coverage, the trial court erred in finding that the policy's business exclusion did not apply. Specifically, the defendant argues that the business exclusion applies because the NGM policy that covered the van at the time of the accident does not qualify as "underlying insurance." The plaintiffs argue that the trial court properly determined that the policy's

business exclusion does not apply because qualifying "underlying insurance" existed at the time of the accident. We agree with the plaintiffs.

"In an insurance policy, an exclusion is a provision which eliminates coverage where, were it not for the exclusion, coverage would have existed." (Internal quotation marks omitted.) *Hammer* v. *Lumberman's Mutual Casualty Co.*, 214 Conn. 573, 588, 573 A.2d 699 (1990). Section III (G) of the policy eliminates coverage of a loss "[c]aused by [the insured's] *business* or *business property* unless *underlying insurance* provides coverage for the *loss*." (Emphasis in original.)

Section I (D) of the policy defines business as "any employment, trade, profession, occupation or any other enterprise in which the *insured* has a financial interest . . . ." (Emphasis in original.) It is uncontested that the van was being used for business purposes, within the policy's definition of the term, at the time of the accident.

The second clause of § III (G)—"unless *underlying insurance* provides coverage for the *loss*"—however, makes the exclusion inapplicable in the present case. (Emphasis in original.) It is uncontested that Pires had insurance through NGM that provided business automobile coverage for the van when the accident occurred. The defendant argues that the NGM policy did not qualify as "underlying insurance," as required by the second clause of the exclusion. The defendant relies on the same reasoning as in its first claim to support its assertion that the second clause of the business exception does not apply, since the coverage did not contain the $500,000 limit. Specifically, the defendant argues that "[t]he exception to the business exclusion is not at issue because 'underlying insurance' never existed." As discussed in part I of this opinion, however, the NGM policy qualified as "underlying insurance," even though the coverage was $300,000 instead of $500,000 or more. Because there was "underlying insurance" that covered the loss caused by the accident, the trial court correctly determined that the business exclusion does not apply.

### III

The defendant's final claim is that, even if excess coverage existed and the business exception did not apply, the trial court erred in the determination of damages. Specifically, the defendant argues that the trial court improperly denied it a $200,000 credit to be charged against the sum the defendant owes toward the unsatisfied portion of the plaintiffs' judgments. The plaintiffs argue that nothing in the policy provides for such a credit and that the defendant is already receiving the benefit of a $200,000 credit because it is only obligated to pay for recovery exceeding $500,000. We agree with the plaintiffs.

Section II (A) of the policy states: "If you are legally

liable to pay damages for a loss to which this insurance applies, we will pay your net loss in excess of the retained limit." (Emphasis omitted.) Section I (J) defines net loss, in relevant part, as "[t]he amount you are legally obligated to pay as *damages for personal injury, bodily injury or property damage* including prejudgment interest. . . . All reasonable expenses you incur in the investigation, settlement and defense of any claim or suit at our request. This does not include expenses covered by another policy or expenses we incur under the Defense and Settlement section of this policy and salaries of your employees . . . ." (Emphasis in original.) There is nothing in the terms of the policy, however, to support the defendant's argument that it is entitled to a credit.

The defendant's argument relies on the proposition that "an excess carrier is entitled to a credit, not from the primary carrier's settlement, but from the amount allocable to the primary under its policies. In other words, the excess carrier is entitled to a credit for the full amount of the primary carrier's coverage before it is required to pay any cleanup expense." *UMC/Stamford, Inc.* v. *Allianz Underwriters Ins. Co.*, 276 N.J. Super. 52, 69, 647 A.2d 182 (1994); accord *Chemical Leaman Tank Lines, Inc.* v. *Aetna Casualty & Surety Co.*, 177 F.3d 210, 227 (3d Cir. 1999). As the plaintiffs correctly point out, however, these cases are distinguishable from the present case in that they deal with drop-down coverage, a theory of recovery that the plaintiffs are not pursuing in this case. The defendant received the benefit of the $200,000 gap in coverage by not being required to pay any money until after the requisite $500,000 limit. On the basis of the foregoing, we conclude that the trial court properly determined that the defendant was not entitled to a $200,000 credit under the policy.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We refer to Domingos Gabriel and Laurinda Gabriel, collectively, as the plaintiffs, and individually by name where appropriate.

[2] Domingos Gabriel recovered judgments in the amount of $1,200,000 from Pires and Pools Plus, and Laurinda Gabriel recovered judgments in the amount of $600,000 from Pires and Pools Plus.

[3] The plaintiffs also recovered $450,000 from a settlement with Monroe Insurance Center, Inc., the insurance broker that sold Pires the policy. See *Pires* v. *Monroe Ins. Center, Inc.*, Superior Court, judicial district of Fairfield, Docket No. CV-14-6042866-S (May 31, 2016).

[4] Because the plaintiffs stand in the shoes of Pires, the term plaintiffs will also be used when referring to Pires' actions before he assigned his rights under the umbrella policy to the plaintiffs. See *Brown* v. *Employer's Reinsurance Corp.*, 206 Conn. 668, 673, 539 A.2d 138 (1988).

[5] The $200,000 gap is derived from the difference between the $300,000 underlying coverage and the $500,000 limit in the policy.

[6] Indeed, if said language did exist, it would create an ambiguity in the policy. Instead, we agree with the plaintiffs that the policy language is clear and unambiguous.